September 1794, "I do hereby acknowledge the above and within statement to be just and true, and the several sums of money herein stated to have been paid by *William Thomas*, I acknowledge to be right and agreeable to my several orders drawn on him, which said orders were drawn by me previous to my assigning his bonds, herein credited, to Mrs. *Mary Woodland*; and that I have received no money, nor drawn any orders on him on account of the said bonds, since the assignment of said bonds to the said *Mary Woodland*." The plaintiff then produced the original bond, which had not been filed in the cause, but gave no evidence of the assignment upon the same, signed *George Denning*, and objected to the said paper containing the said account, and the receipt of the same, going in evidence to the jury. And the Court, [*Earle*, Ch. J. and *Worrell*, A. J.] were of opinion, that the same was not proper and admissible evidence to go to the jury, being of opinion that the admissions of the assignor, made subsequent to the assignment, as evidenced in the acknowledgment itself, of payments made to him, ought not to be received as testimony to the prejudice of the rights of the assignee. The defendant excepted; and the verdict and judgment being against her, she appealed to this court

The cause was argued before POLK, NICHOLSON, and JOHNSON, J.

*Carmichael* and *Murray*, for the Appellant, contended, 1. That there was no sufficient evidence of the assignment of the bond to *Woodland*, under whom *Page* claimed. 2. The declarations of *Denning* were evidence. They cited *Chitty's Plead*. 6. *Bauerman vs. Radenius*, 7 T. R. 662; and *Peake's Evid*. 164.

*Houston* and *Barroll*, for the Appellee.

JUDGMENT REVERSED.

---

## HAWKINS's Lessee vs. GOULD.

DEC. (E. S.)

APPEAL from *Queen Anne's* County Court. Ejectment for a tract of land called *Macklinborough*. Defence on

A deed executed, in 1683, and stated to be made between T W, and J W his wife, of the one part, and J P of the other part, and that T W, with the consent of J W his wife, in consideration of, &c. granted, &c. to J P, and his heirs, a parcel of land, and signed and sealed by T W and J W his wife, and acknowledged by them in open court, "the said J being first privately examined as the law requires"—*Held* to be inoperative to pass a fee from J W to J P, she not being a grantor in the deed.

warrant, and plots returned.  At the trial the plaintiff, (now appellant,) read in evidence the certificate and patent of the tract of land called *Macklinborough*.  He also traced his title from the patentee to a certain *Judith Howden*, who he proved to have intermarried with one *Thomas Wyatt*; and then read the following deed from *Thomas Wyatt*, and *Judith* his wife, to *John Parsons*, to prove an alienation of her title to *Parsons*, and his heirs, for ever, viz.  "Among the land records of *Talbot* county, among other things the following is enrolled, to wit, *Thomas Wyatt*, and *Judith Wyatt* his wife, the said *Judith* being first privately examined as the law requires, come before the court, and did acknowledge this following deed of sale unto *John Parsons*: This indenture made the 16th day of November, in the eighth year of the Dominion of *Charles*, absolute Lord and Proprietary of the Provinces of Maryland and Avalon, Lord Barron of *Baltimore*, &c. 1683, between *Thomas Wyatt*, and *Judith Wyatt* his wife, of the one party, and *John Parsons* of the other party, both inhabitants in *Talbot* county, in the aforesaid province of *Maryland*—Witnesseth, that *Thomas Wyatt*, with the consent of *Judith Wyatt* his wife, for and in consideration of five thousand and eight hundred pounds of tobacco, to him in hand already, before the sealing and delivery hereof to the said *John Parsons*, the recept whereof he doth acknowledge, and for every part thereof doth hereby absolutely and clearly exonerate, acquit and discharge, the said *John Parsons*, his heirs, executors, administrators and assigns, and by these presents hath given, granted, bargained, alienated, sold, enfeoffed and confirmed, unto him the said *John Parsans*, his heirs and assigns, for ever, a parcel of land lying and being in *Chester* river, and in *Talbot* county, and in the said province of *Maryland*, beginning at," &c. "containing and now laid out for one hundred and ninety and nine acres, more or less; to have and to hold the said lands for ever, together with all ways, easements and privilledges, to the same belonging or appertaining, together with all writing, deeds, charters, devidents, touching or concerning or any part or parcel thereof, to have and to hold the said parcel of land according to the bounds above mentioned, together with all meadow or feeding pasture grounds, underwoods, water courses, fishing, fowling ways, profits, commodities, commons of

pastures, hereditaments whatsoever, to the said lands, the said lands being lately in the tenure or occupation of the said *Thomas Wyatt*, and also all the estate, right, title and interest, use or possession, property, claim and demand whatsoever, of him the said *Thomas Wyatt*, of, in and to, the same, with all writings, and all deeds, evidences, charters, transcripts, fines, pattents, court rolles, excripts and muniments whatsoever, touching and concerning the premises, or any part or parcel thereof, to have and to hold, and shall and will, forevermore, warrant and defend by these presents; and the said *Thomas Wyatt*, at the time of ensealing and delivery hereof, of these presents, is and standeth, is, and until a good pure and perfect and absolute estate of inheritance of all and singular the before granted premises, and every part thereof, shall be fully vested, settled and executed, in and upon the said *John Parsons*, and his heirs, according to the true intent and meaning of these presents, shall remain, continue and beseized, of and in the said lands, and all and singular other the premises, in and by these presents granted, bargained and sold, with all and every of these rights and appertenances, and members, of a good, perfect and absolute estate of inheritanced, in fee simple, without any condition or limitation of any use or user, or estates, in or to any person or persons whatsoever, to alter, change, defeat, determine, or make void the same; and that the said *Thomas Wyatt*, at the time of ensealing and delivery of these presents, hath full power, good right, and lawful authority, to grant, bargain, sell, and convey, and all and singular the before hereby granted or mentioned premises to be granted, premises with their and every of their rights and appertenances, unto the said *John Parsons*, his heirs and assigns, in manner and form aforesaid; and that he the said *John Parsons*, his heirs or assigns, and every of, shall and may, by force and virtue of these presents, from time to time, and of all times hereafter, lawfully, peacably and quietly, have, hold, occupy, possess and enjoy, the said lands, and all and singular the before granted premises, with their and every of their rights, members and appertenances, to have, receive and take, the issue and profits thereof, to his and their own proper use and behoof for ever, without any lett, suit, trouble, denial, interruption, eviction or disturbance, of the said *Thomas Wyatt*, his

heirs or assigns, or of any other person or persons whatsoever, lawfully claiming from or by, or under him, or any of them, or by his or their means, act or consent, title, interest, privity or procurement, and that free and clear, and freely and clearly acquitted, exonerated and discharged, or otherwise, from time to time well and sufficiently save and keep harmless by the said *Thomas Wyatt*, his heirs, executors or administrators, of and from all manner of fines, or other gifts, grants, bargains, sales, leases, mortgages, joynters, dowers, title of dower, statute merchants, and of staple, recognizance, extents, judgments, executions, uses, entailes and issues, with all other titles, troubles, incumbrance whatsoever. In witness whereof the before named *Thomas Wyatt*, and *Judith Wyatt* his wife, of the one party, and John Parsons of the other party, hath interchangeably set their hands and seals the day and year above written.

Signed, sealed and delivered, in the presence of us.
John Punowes,
his
Richd. ⋈ Bridge."
mark

his
*Thomas* ⋈ *Wyatt*, [Seal.]
mark
her
*Judith* ⋈ *Wyatt*, [Seal.]
mark

This deed was certified by the clerk of *Talbot* county court to be copied from one of the land records of that county. The plaintiff also read in evidence a deed from *John Parsons* to *John Hamer*, and one from *John Parsons* and *Dameras Parsons* his wife, to *John Hamer*. He then read in evidence the will of *John Hamer*, devising his dwelling plantation to his daughter *Mary Hamer*, and proved that a certain *Mary Hamer* married one *John Chaires*, and by him had two sons *John Chaires* and *James Chaires*, of whom *John Chaires* was her eldest son and heir at law; that she survived her said husband *Chaires*, and intermarried with a certain *Solomon Clayton*, and after his death she became the wife of one *Edward Downes*, and died the widow of *Downes* in the year 1779. The plaintiff also proved by a witness, that he, the witness, was at the funeral of the said *Mary Downes*, and when he had returned home with her mother, who is now dead, he was informed by her, that the maiden name of the said *Mary Downes* was *Hamer*, but that he did not remember to have understood from her that

the said *Mary Downes* was the daughter of *John Hamer.* The plaintiff also proved by said witness, that the late *John Chaires,* deceased, who was sometimes called Preacher *John,* was the eldest son of the above named *John Chaires,* son of the said *Mary Downes,* and that the said *Mary Downes,* at her decease, was a very old woman. By another witness—that many years ago he lived in the family of the above named *Mary Downes,* and that he constantly understood from her and others, that preacher *John Chaires* was her grandson, the son of her eldest son *John Chaires,* at that time deceased; and that the plantation in *Johny Cake Neck,* held by the said *Mary Downes,* she delivered up to her said grandson in her life-time. Which last mentioned evidence was offered, not to prove a possession in the plantation aforesaid, but merely to show that *John Chaires,* preacher, was grandson and heir at law of *Mary Downes.* The plaintiff then read in evidence a deed from the said preacher *John Chaires,* to the lessor of the plaintiff. When the plaintiff had thus traced his title from the patentee, the defendant moved the court to instruct the jury, that the above mentioned deed from *Thomas Wyatt* and *Judith* his wife, to *John Parsons,* was inoperative to pass a fee from *Judith Wyatt* to *John Parsons,* she not being a grantor in that deed, and that there was a chasm in the evidence, and that the plaintiff, who is to recover on the strength of his title, could not therefore support his ejectment. The court, [*Purnell,* A. J.] was of opinion, and did so state to the jury, that the said deed from *Thomas Wyatt* and *Judith* his wife, to *John Parsons,* was ineffectual to pass the fee simple estate to *John Parsons,* the said *Judith* not being a grantor in the said deed, and that the title of the plaintiff was not fully made out. The plaintiff excepted; and the verdict being against him, he appealed to this court.

The cause was argued before POLK, NICHOLSON, and JOHNSON, J.

*Carmichael,* for the Appellant, contended, that a different construction will be given to a deed of 1683 from what would be given to a modern deed; and although the deed in question would be invalid if a recent one, it was

1811,
Hawkins
vs
Gould

valid as an ancient deed. He referred to 2 *Blk. Com.* 298, 379, 380, *Wright vs. Kemp*, 3 *T. R.* 470; and *Langdon vs. Goole*, 3 *Lev.* 21. In the deed, the name of *Judith Wyatt* is inserted in the premises. *Lord Say and Seal's* case, 10 *Mod.* 46. That if the deed was originally invalid it was made valid by the acts of 1674, *ch.* 2, *s.* 4, and 1715, *ch.* 47, *s.* 4.

*Kerr*, for the Appellee The deed is incompetent to pass the fee in the land from *Judith Wyatt*, either at common law or under the acts of assembly. It does not, on the face of it, purport to pass any interest except that of the husband. 1. *Judith Wyatt* has not granted. 2. If she did, yet the deed was not properly acknowledged.

1. *Judith Wyatt* doth not grant either in the premises, or in the *habendum*. 2 *Blk. Com.* 298. If the deed can operate, it must be as a deed of bargain and sale: It cannot operate as a bargain and sale, for there is no *money consideration*. 1 *Blk. Com.* 464. *Gittings's Lessee vs. Hall*, 1 *Harr. & Johns.* 14. *Chaney's Lessee vs. Watkins, Ibid* 527. The words of the conveyance, must express the extent of the interest to be passed. *Wood's Convey.* 228, 239. The deed must be sealed and delivered by the party *contracting*. *Co. Litt.* 35, b. There must be a grantor, grantee, and a thing granted. 2 *Blk. Com.* 296, 297. *Wood's Convey.* 236.

2. The deed was not executed and acknowledged by *Judith* as the acts of assembly required. 1 *Bac. Ab.* 467. *Wood's Convey.* 167, 169. *Webster vs. Hall*, 2 *Harr. & M'Hen.* 19. *Flanagan vs. Young, Ibid* 88. *Lewis vs. Waters*, 3 *Harr. & M'Hen.* 430. *Mayson's Lessee vs. Sexton*, 1 *Harr. & M'Hen.* 276; and *Hammond's Lessee vs. Brice, Ibid* 323, 333. It is not stated when the deed was recorded.

*Carmichael*, in reply. The deed was acknowledged in open court, and therefore the form of the acknowledgment need not appear. It is also aided by the act of 1807, *ch.* 52. The deed was recorded in time, for having been acknowledged in court it was left with the clerk to be enrolled, and his omission of the time of enrolment will not invalidate it.

JUDGMENT AFFIRMED.